**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-CV-01325-WCG |
| | ) | |
| SUPPLE, LLC, PETER APATOW, JR., and | ) | |
| MONITA POUDYAL, | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Commission and Defendants Supple, LLC, Peter Apatow, Jr., and Monita Poudyal stipulate to the entry of this Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

**FINDINGS**

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in deceptive acts or practices and false advertisements in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52,

in connection with the labeling, advertising, marketing, distribution, and sale of the nutritional supplement, Supple.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.   This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law.


**ORDER**

**<u>DEFINITIONS</u>**

For the purpose of this Order:

1.     "Clearly and Conspicuously" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

    A.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual

and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

B.    A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

C.    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

D.    In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

E.    The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

F.    The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

G.    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

H.    When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

2.    "Close Proximity" means that the disclosure is very near the triggering representation.   For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

3. "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. "Continuity Program" means any plan, arrangement, or system under which a consumer receives periodic shipments of products or the provision of services without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product or service.

5. "Corporate Defendant" means Supple, LLC and its successors and assigns.

6. "Covered Product" means any dietary supplement, food, or drug, including, but not limited to, Supple.

7. "Defendants" means the Individual Defendants and the Corporate Defendant.

8. "Drug" and "food" mean as defined in Section 15 of the FTC Act, 15 U.S.C. § 55.

9. "Endorsement" means as defined in 16 C.F.R. § 255.0(b).

10. "Essentially Equivalent Product" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product; and provided further that for purposes of substantiating claims pursuant to this Order, oral ingestion of glucosamine or chondroitin in a liquid or powder shall be deemed the same form and route of administration as oral ingestion of glucosamine or chondroitin in a pill, tablet, or capsule if reliable scientific evidence generally accepted by experts in the field indicates that the difference is unlikely to impede or inhibit the effectiveness of the ingredients.

11.     "Individual Defendants" means Peter Apatow, Jr. and Monita Poudyal.

12.     "Material connection" means any relationship that materially affects the weight or credibility of any endorsement and that would not reasonably be expected by consumers.

13.     "Person" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

14.     "Pre-existing Supple Continuity Program" means any Continuity Program in existence on or before the date of issuance of this Order.

15.     "Reliably Reported," for a human clinical test or study ("test"), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

16.     The term "including" in this Order means "including without limitation."

# I.

## PROHIBITED REPRESENTATIONS:  PAIN RELIEF AND EFFICACY CLAIMS

**IT IS ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the  manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are hereby permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

A.     provides complete and long-lasting relief from joint pain;

B.     treats or relieves chronic or severe pain, including chronic or severe pain caused by any form of arthritis and fibromyalgia;

C.     repairs cartilage;

D.     rebuilds joints and entire joint structures;

E.     restores mobility and joint function to consumers with severe mobility restrictions, such that they can engage in strenuous physical activities like downhill skiing and playing tennis; or

F.     cures, mitigates, or treats any disease;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence substantiating that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing shall be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing. In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to Plaintiffs. Defendants shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## II.

**PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, Endorsement, depiction, or illustration, any representation, other than representations covered under Section I of this Order, about the health benefits, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted

by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission. Defendants shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III.

### PROHIBITED MISREPRESENTATIONS: REGARDING TESTS OR STUDIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promoting, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of a product name, Endorsement, depiction, or illustration the following:

A. That the performance or benefits of the Covered Product are scientifically or clinically proven; or

B. The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research.

### IV.

### FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order shall prohibit Defendants from:

A. Making any representation for any drug that is permitted in labeling for such drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

B.     Making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## V.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including, but not necessarily limited to:

A.     All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.    All documents referring or relating to the sponsorship of the test, including all communications and contracts, between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement shall not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Corporate Defendant's size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## VI.

## PROHIBITED REPRESENTATIONS:  REGARDING EXPERT ENDORSEMENTS

IT IS FURTHER ORDERED that Defendant Poudyal, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and her agents, representatives, employees, and all persons or entities in active concert or participation with her, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising,

promoting, offering for sale, sale, or distribution of any Covered Product, is permanently restrained and enjoined from making, expressly or by implication, any representations as an expert endorser, including, but not limited to, the representations covered by Sections I, II, III, and IV, above, unless she possesses and relies upon:

A.      Competent and reliable scientific evidence required for the particular representation, as set forth in Sections I, II, III, and IV, above; and

B.      An actual exercise of the represented expertise, in the form of an evaluation or test of such product conducted and evaluated in an objective manner, and which is generally accepted in the relevant profession to yield accurate and reliable results.

## VII.

## DISCLOSURE OF MATERIAL CONNECTIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promoting, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making any representation, expressly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, about any expert Endorser, consumer Endorser, or user of such product unless they disclose, Clearly and Conspicuously, and in Close Proximity to the representation, a material connection, when one exists, between such Endorser or user and Defendants or any other individual or entity manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing such product.

# VIII.

## MONETARY JUDGMENT AND CONSUMER REDRESS

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of one-hundred fifty million, six-hundred thousand dollars ($150,600,000) is entered in favor of the Commission against Defendants Supple and Apatow, jointly and severally, as equitable monetary relief.

B.      Defendants Supple and Apatow are ordered to pay to the Commission two-hundred eighty-five thousand dollars ($285,000), which, as Defendants Supple and Apatow stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

C.      Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

D.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants Supple and Apatow's sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.  the Financial Statement of Defendant Supple signed by Supple CEO Peter Apatow on March 1, 2016, including the attachments;

2.  the Financial Statement of Defendant Apatow signed on March 8, 2016, including the attachments; and

3.  the additional documentation submitted from Defendants' counsel Linda Goldstein and La Toya Sutton to Commission counsel Elizabeth Sanger and Tawana Davis,

including: (1) the letter dated February 2, 2016, attaching a schedule showing Supple's monthly sales revenue minus returns for the period 2011-2015; (2) the letter dated February 17, 2016, attaching tax returns for 2013 and 2014 for Defendant Apatow, and balance sheets for Defendant Supple from 2013-2015; and (3) the email dated March 31, 2016, attaching information about Defendant Apatow's defined benefit plan and Defendant Supple's financial activity in the first quarter of 2016.

A.      The suspension of the judgment will be lifted as to Defendant Supple or Defendant Apatow if, upon motion by the Commission, the Court finds that such Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

B.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

C.      Defendants Supple and Apatow relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

D.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

E.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

F.     Defendants Supple and Apatow acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which they must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

G.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## IX.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly

failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the Commission. If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

## X.

## NOTICE TO SUBSCRIBERS ON AUTO-SHIPMENT CONTINUITY PROGRAM

**IT IS FURTHER ORDERED** that, within 30 days of entry of this Order, Defendants shall send by first-class mail an exact copy of the notice attached as Attachment A, showing the date of mailing, to any consumer who, as of the date of entry of this Order, participates in any Pre-existing Supple Continuity Program. The notice required by this Section shall not include any other document or enclosures. Defendants are required to grant subscribers' cancelation requests in response to the notice attached as Attachment A within 5 days following receipt of the request, and are permanently restrained and enjoined from discouraging such subscribers from canceling. Defendants are further permanently restrained and enjoined from using customer information to resolicit orders from customers who canceled participation in any Pre-existing Supple Continuity Program.

## XI.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within seven days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For ten years after entry of this Order, the Individual Defendants for any business that such Defendants, individually or collectively with the Corporate Defendant, are majority owners or control directly or indirectly, and the Corporate Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within seven days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.     Sixty days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.

1.     Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement, if any, of the other Defendant

(which the Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission;

2.      Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of the Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  the creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services, whether as an employee or otherwise, and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.       Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within 14 days of its filing.

D.       Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.       Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580.  The subject line must begin:  *FTC v. Supple., et al.*, **[insert X number]**.

## XIII.

## RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for five years.  Specifically, the Corporate Defendant and the Individual Defendants for any business that the Individual Defendants, individually or collectively with the Corporate Defendant, are majority owners or control directly or indirectly, must create and retain the following records:

A.       Accounting records showing the revenues from all Covered Products sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.     Complaints and refund requests relating to any Covered Product, whether received directly or indirectly, such as through a third party, and any response;

D.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.     A copy of each unique advertisement or other marketing material disseminated since the date of entry of this Order for any Covered Product.

## XIV.

## H.COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying. The Commission also is authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XV.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED** this 6th day of October, 2016.

s/ William C. Griesbach
**WILLIAM C. GRIESBACH, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

SO STIPULATED AND AGREED:

ELIZABETH JONES SANGER
Bar Number: WI 1080449
TAWANA E. DAVIS
Bar Number: NY 2390425
Attorneys for Plaintiff
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Drop CC-10528
Washington, D.C. 20580
Tel.: 202-326-2757, -2755
Fax: 202-326-3259
Email: esanger@ftc.gov; tdavis@ftc.gov

SUPPLE, LLC
By:

PETER APATOW, JR., individually, and
as CEO of SUPPLE, LLC

MONITA POUDYAL

LINDA GOLDSTEIN
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
Tel.: 212-790-4544
Fax: 212-790-4545
Email: lgoldstein@manatt.com
Counsel for Defendants

21